1

2

3

4

5

6

7

8

9               IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11  GORDON JAMES WRIGHT,

12              Petitioner,              2: 09 - cv - 2543 - KJM TJB

13       vs.

14  J HAMLET,

15              Respondent.             ORDER, FINDINGS AND

16                                      RECOMMENDATIONS

17  _____/

18       Petitioner, Gordon James Wright, is proceeding *pro se* with a petition for writ of habeas

19  corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted on two felony counts, one count

20  of transporting methamphetamine (Cal. Health & Safety Code § 11379(a)) and one count of

21  possessing methamphetamine for sale (*Id.* § 11378), and two misdemeanor counts, one count of

22  possessing drug paraphernalia (*Id.* § 11364) and one count of possessing less than 28.5 grams of

23  marijuana (*Id.* § 11357(b)).

24       In his amended petition for habeas corpus, Petitioner raises thirteen grounds for relief.  By

25  previous order, the court dismissed claims one, two, four, eight, ten, eleven, and thirteen for

26  failure to exhaust state court remedies.  *See* Docket Nos. 39 & 43.  Thus, Petitioner has six

1

1    remaining claims for relief; specifically: (1) the trial court erred in allowing the hearsay

2    testimony in violation of Petitioner's right to confront the witnesses against him ("Claim III");

3    (2) his trial counsel was ineffective for failing to challenge Petitioner's arrest on the basis that the

4    arresting officers lacked probable cause ("Claim V"); (3) his trial counsel was ineffective for

5    failing to seek suppression of the evidence seized as a result of the allegedly unlawful arrest

6    ("Claim VI"); (4) his trial counsel was ineffective for failing to obtain records from the

7    California Department of Motor Vehicles and doctor's reports which would have shown that the

8    arrest was lacking in probable cause ("Claim VII"); (5) his trial counsel was ineffective for

9    failing to file a motion to dismiss and for failing to file a peremptory challenge against the trial

10   judge ("Claim IX"); and, (6) his appellate counsel was ineffective for failing to raise Claim III on

11   direct appeal[1] ("Claim XII").  For the reasons stated herein, the federal habeas petition should be

12   denied.

13                            I.  FACTUAL BACKGROUND

14          On September 8, 2004, a task force of law enforcement officers were performing

15   probation and parole searches in and around Redding, California.  Rep.'s Tr. at 88.  Members of

16   the task force went to a local apartment complex to search for a wanted individual.  *Id.*  The

17   target individual was not at the location, and some officers moved away from the area to set up

18   surveillance in case the wanted individual returned to the apartment.  *Id.*  Officer Joseph Jones

19   sat in his vehicle in the apartment complex's parking lot.  *Id.* at 91.  After several minutes,

20   Officer Jones watched as a red Ford Tempo entered the parking lot and parked about twenty to

21   thirty feet away from him.  *Id.*  Petitioner exited the vehicle and began walking towards the

22   apartment that was under investigation.  *Id.* at 97.

23          Officer Jones went to speak with Petitioner and concluded, based on his observation and

24

25          [1]      In the court's previous order on Respondent's motion to dismiss, this claim was
26   dismissed to the extent that it claimed Petitioner's appellate counsel failed to raise claims of
     prosecutorial misconduct.  *See* Docket No. 39, at 15.

1  interaction with Petitioner, that Petitioner was under the influence of drugs or alcohol.  *Id.* at 98.

2  Officer Jones requested assistance from other officers who were at the scene as he checked

3  Petitioner's history on his computer.  One of the officers who responded was Special Agent

4  Supervisor Dan Callahan, who was assigned to the Bureau of Narcotics Enforcement at the

5  California Department of Justice.  Like Officer Jones, Callahan believed Petitioner was under the

6  influence of a controlled substance, and Petitioner was placed under arrest.  *Id.* at 121, 124.

7          After placing Petitioner under arrest, officers performed a search of Petitioner's vehicle.

8  Inside a bag resting on the passenger seat, officers discovered methamphetamine, syringes,

9  marijuana, and a pipe.  *Id.* at 143.

10          Petitioner was charged with transporting methamphetamine, possession of

11  methamphetamine, possession of drug paraphernalia, possession of less than 28.5 grams of

12  marijuana, being under the influence of a controlled substance, and driving under the influence of

13  a controlled substance.  *See* Lodged Doc (Appellant's Petition for Review to California Supreme

14  Court, Ex. A [Court of Appeal's Opinion]) at 1-2.  The jury found petitioner not guilty of being

15  under the influence of a controlled substance and a mistrial was declared as to the driving under

16  the influence charge.  *Id.*  Petitioner was convicted on the remaining counts.  *Id.*

17                    II.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

18          An application for writ of habeas corpus by a person in custody under judgment of a state

19  court can only be granted for violations of the Constitution or laws of the United States.  *See* 28

20  U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.

21  Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

22  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

23  and Effective Death Penalty Act of 1996 ("AEDPA") applies.  *See Lindh v. Murphy*, 521 U.S.

24  320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

25  decided on the merits in the state court proceedings unless the state court's adjudication of the

26  claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

3

1   clearly established federal law, as determined by the Supreme Court of the United States; or (2)

2   resulted in a decision that was based on an unreasonable determination of the facts in light of the

3   evidence presented in state court.  *See* 28 U.S.C. 2254(d); *Perry v. Johnson*, 532 U.S. 782, 792-

4   93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

5        In applying AEDPA's standards, the federal court must "identify the state court decision

6   that is appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

7   "The relevant state court determination for purposes of AEDPA review is the last reasoned state

8   court decision."  *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted).

9   "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

10  orders upholding that judgment or rejecting same claim rest upon the same ground."  *Ylst v.*

11  *Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts

12  must conduct an independent review of the record to determine whether the state court clearly

13  erred in its application of controlling federal law, and whether the state court's decision was

14  objectively unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The

15  question under AEDPA is not whether a federal court believes the state court's determination

16  was incorrect but whether that determination was unreasonable—a substantially higher

17  threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

18  "When it is clear, however, that the state court has not decided an issue, we review that question

19  *de novo*."  *Reynoso v.Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

20  545 U.S. 374, 377 (2005).

21               III.  ANALYSIS OF PETITIONER'S CLAIMS

22        1.  Claim III

23        In Claim III, Petitioner asserts that he was denied his opportunity to confront the

24  witnesses against him guaranteed under the Sixth Amendment.  Petitioner also claims that the

25  testimony that was received into evidence violated state evidentiary law as it was inadmissable

26  hearsay.  Based upon the portions of the record attached as exhibits to the petition, it appears

4

1    Petitioner is complaining about the testimony of Agent Rudd, who was present during the search

2    of the vehicle.

3         Agent Rudd, who was the officer in charge of the investigation, testified as follows:

4         Q (by defense counsel): Yeah.  Was the pouch in the larger fishing
          bag when you first saw it?

5         A: I don't recall if it was or not.

6         Q: Okay.  So, the bag that had the methamphetamine in it, that bag

7         had methamphetamine in it when you first looked at it, correct?

8         A: That's correct.

9         Q: But you don't recall whether – where it was when you first saw
          it or was it –

10        A: *I just know my commander told me that this is what was found*

11        *in the bag.*  And like I said, everything was brought out onto the
          hood of the car.  Everything was removed from the bag and placed

12        on the hood of the car.

13        Q: Your Honor, I'd be willing to stipulate to its admission with an
          admonition that part of that foundation should not be received for

14        the truth of the matter asserted, because it is hearsay.

15        The Court: Well, in this instance, in light of the state of the
          evidence as revealed on the record, I'll treat that as a tardy

16        objection and – and as a motion to strike.  And because of its

17        tardiness, deny it.

18   Rep.'s Tr. at 175-76 (emphasis added).  Apparently Petitioner's claim stems from the italicized

19   sentence, claiming that he was not presented with the officer who actually discovered the bag in

     Petitioner's vehicle, but only the hearsay statement from another officer.

20        To the extent that Petitioner claims the trial court violated state evidentiary law by

21   allowing the hearsay testimony, Petitioner's claim does not present a basis for granting federal

22   habeas relief.  A federal court may not collaterally review a state court evidentiary ruling unless it

23   violates federal law, either by violating a specific constitutional provision or by infringing upon

24   the due process right to a fair trial.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Federal habeas

25   relief is not available for state law errors because the writ can only be granted for violations of

26

1   the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68

2   (1991).  The issue for a federal court is "whether the state proceedings satisfied due process; the

3   presence or absence of a state law violation is largely beside the point." *Jammal v. Van de*

4   *Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991); *see Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6

5   (1983) ("[T]he Due Process clause does not permit the federal courts to engage in a finely tuned

6   review of the wisdom of state evidentiary rules.").  As such, "[t]he admission of evidence does

7   not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation

8   of due process." *Jonhson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at

9   67-68).

10          To the extent Petitioner claims a violation of the Confrontation Clause, Petitioner's claim

11   is equally without merit.  Even if the above statement would violate the Confrontation Clause,

12   Petitioner's claim fails because Petitioner did, in fact, have the opportunity to confront the officer

13   who actually searched Petitioner's vehicle and recovered the bag which held the drugs.

14   Commander Callahan testified, prior to Agent Rudd's testimony, that he searched Petitioner's

15   vehicle after Petitioner was placed under arrest.

16          Q: Okay.  After Agent Abney gave you the money, at some point in
17          time did you complete a search of Mr. Wright's vehicle after he
             had been arrested?

18          A: Yes sir.

19          Q: And what, if anything, do you recall finding?

20          A: I found a green bag sitting on the right front passenger seat.
             Opening it up, ultimately found an amount of methamphetamine in
21          powder form in various packets.  There were syringes in there, two
             of which were loaded.  There was an amount of marijuana.  I
22          believe there was a marijuana pipe.  There were what I call pay-
             owes narcotic – or documentations, notations on paper, indicative
23          of narcotics sales.  I turned this all over to Agent Rudd.

24          Q: Okay.  So, you did the initial search, saw illegal things, in your
             mind, suspected methamphetamine and such, and then turned
25          everything over to Agent Rudd?

26          A: Yes, sir.

1    Rep.'s Tr. at 142-43.

2            Based on Commander Callahan's testimony, Petitioner fails to present claim for violation

3    of the Confrontation Clause as he was, in fact, given the opportunity to confront the officer who

4    searched and discovered the contraband in Petitioner's vehicle.  As such, Petitioner is not entitled

5    to relief on this claim.

6            2.  Claims V, VI, VII, and IX

7            In Claim's V, VI, VII, and IX, Petitioner asserts that his trial counsel failed to provide the

8    effective assistance of counsel guaranteed by the Sixth Amendment.  In *Strickland v.*

9    *Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating

10   ineffective assistance of counsel.  First, the petitioner must show that considering all the

11   circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.*

12   at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result

13   of reasonable professional judgment.  *See id.* at 690.  The federal court must then determine

14   whether in light of all the circumstances, the identified acts or omissions were outside the range

15   of professional competent assistance.  *See id.*  "[C]ounsel is strongly presumed to have rendered

16   adequate assistance and made all significant decisions in the exercise of reasonable professional

17   judgment."  *Id.*

18           Second, a petitioner must affirmatively prove prejudice.  *See id.* at 693.  Prejudice is

19   found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

20   result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is "a

21   probability sufficient to undermine the confidence in the outcome."  *Id.*  The likelihood of a

22   different result must be substantial, not just conceivable."  *Harrington v. Richter*, __ U.S. __, 131

23   S.Ct 770, 791, 178 L.Ed.2d 624 (2011).  A reviewing court "need not determine whether

24   counsel's performance was deficient before examining the prejudice suffered by defendant as a

25   result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the

26   ground of lack of sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280

7

1   F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697).  When analyzing a claim for

2   ineffective assistance of counsel where a state court has issued a decision on the merits, a habeas

3   court's ability to grant the writ is limited by two "highly deferential" standards.  *Premo v. Moore*,

4   __ U.S. __, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011).  "When § 2254(d) applies," as it does

5   here, "the question is not whether counsel's actions were reasonable.  The question is whether

6   there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*;

7   *see also Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable

8   application' clause, a federal habeas court may not issue the writ simply because that court

9   concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly.

10  Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the

11  facts of his case in an objectively unreasonable manner." (citations omitted)).

12       In Claim V, Petitioner asserts that his trial counsel was ineffective for failing to challenge

13  his arrest for lack of probable cause.  Specifically, Petitioner claims that it was never proven by

14  scientific evidence that he was under the influence of an illegal substance, that he was acquitted

15  of the charge of being under the influence of a controlled substance and mistrial was declared as

16  to the driving under the influence charge, and that the reasons the officers gave for their

17  suspicion that Petitioner was under the influence of a controlled substance "have other valid

18  explanations."

19       Petitioner misunderstands the probable cause standard.  The probable cause standard is a

20  "practical, nontechnical conception." *Brinegar v. United States*, 338 U.S. 160, 176 (1949).  "In

21  dealing with probable cause, . . . as the very name implies, we deal with probabilities.  These are

22  not technical; they are the factual and practical considerations of everyday life on which

23  reasonable and prudent men, not legal technicians, act." *Id.* at 175; *see also Illinois v. Gates*, 462

24  U.S. 213, 231 (1983).  Probable cause to arrest "exists where 'the facts and circumstances within

25  [the officers'] knowledge and of which they [have] reasonably trustworthy information [are]

26  sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has

8

1  been or is being committed" by the person to be arrested. *Brinegar*, 338 U.S. at 175-76 (quoting

2  *Carrol v. United States*, 267 U.S. 132, 162 (1925) (alterations in orignal)).

3  In the present case, Officer Jones was waiting in his car when he saw Petitioner drive his

4  car into the same parking lot and park about twenty to thirty feet away.  Rep.'s Tr. at 92.  Officer

5  Jones had been trained to recognize individuals who are under the influence of drugs and alcohol.

6  *Id.* at 95.  Based upon this training and his initial observation of Petitioner, Officer Jones

7  believed Petitioner was showing "objective signs and symptoms" of being under the influence of

8  drugs or alcohol.  *Id.* at 96.  Specifically, Officer Jones noticed that Petitioner was having

9  difficulty keeping his eyes open, that his eyes were "very puffy, red and watery," that he was

10  having difficulty walking, and that his speech was slow and slurred to the point that it was

11  difficult to understand what he was saying.  *Id.* at 97-100.  Based upon his experience and

12  training, Officer Jones believed Petitioner was under the influence of drugs or alcohol.  *Id.*  at

13  101, 103.  Officer Jones then turned the investigation over to Commander Callahan.  *Id.* at 115.

14  Like Officer Jones, Callahan believed, based upon his observation of Petitioner's

15  appearance and mannerisms prior to his arrest, that Petitioner was under the influence.  *Id.* at

16  121, 124.  Callahan observed that Petitioner was "extremely unsteady on his feet" and  was

17  slurring his speech.  *Id.* at 125-26.

18  Petitioner has offered non-criminal reasons for his appearance.  He claims that he suffers

19  from hay fever that causes his eyes to become red and puffy, that is slurred speech is the result of

20  missing teeth, and that he has trouble walking due to a problem with his lower back that he has

21  had since 1996.  Even assuming that Petitioner is being truthful and that he was not under the

22  influence of drugs or alcohol at the time of his arrest, it does not negate the probable cause to

23  support his arrest.  Probable cause does not require an officer to be certain that a crime is or has

24  been committed, nor does it require the officer to believe so beyond a reasonable doubt; probable

25  cause merely requires that the officer has a reasonable belief that an offense is or has been

26  committed.  *Brinegar*, 338 U.S. at 175-76.  In the present case, it is a reasonable conclusion

1   based upon what the officers observed that Petitioner was under the influence of alcohol or a

2   controlled substance.  Petitioner's speech was slurred to the point he was difficult to understand,

3   his eyes were red and puffy, and he was having difficulty walking.  These are all common signs

4   of intoxication to a reasonable person.

5          Because the arresting officers had the requisite probable cause to arrest Petitioner, any

6   effort by his counsel to challenge the arrest for lack of probable cause would have been fruitless.

7   As such, Petitioner cannot establish that he was prejudiced by his counsel's alleged

8   ineffectiveness and, therefore, Petitioner is not entitled to relief on his fifth claim.

9          In Claim VI, Petitioner claims that his counsel was ineffective for failing to attempt to

10  suppress the evidence found in his vehicle as the evidence was the fruit of the poisonous tree of

11  an unlawful arrest.  As discussed above, Petitioner's arrest, contrary to his assertion, was based

12  on probable cause and lawful.  Officer Jones witnessed Petitioner drive into the parking lot, park,

13  and get out of the vehicle.  Rep.'s Tr. at 92.  Though Petitioner does not allege that the search

14  was an invalid search incident to arrest, and only that the arrest was unconstitutional, it is likely

15  that the trial court would have concluded that, under clearly established federal law at the time of

16  the offense, the search was a valid search incident to arrest without a warrant.  *See Chimel v.*

17  *California*, 395 U.S. 752 (1969); *New York v. Belton*, 453 U.S. 454 (1981); *Thornton v. United*

18  *States*, 541 U.S. 615, 617 (2004) (valid search incident to arrest even if the arrest occurs after the

19  defendant left the vehicle).[2]  Because Petitioner was lawfully arrested, any attempt to suppress

20  evidence on the basis that is was the fruit of an unlawful arrest would have been meritless.

21  Petitioner cannot establish prejudice on this ineffectiveness claim, and Claim VI should be

22  denied.

23         In Claim VII, Petitioner alleges that his counsel was ineffective for failing to obtain

24  

25         [2]  More than a year after Petitioner's trial, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332 (2009), which limited when a search incident to arrest may be performed on a vehicle and, based upon the evidence adduced in this case, would have likely prohibited the

26  search of Petitioner's vehicle.

1   D.M.V. and medical records to show that his arrest was lacking in probable cause.  It is unclear

2   what effect the D.M.V. records would have had, as Petitioner was arrested for being under the

3   influence of a controlled substance, independent of any issue with his vehicle registration.

4   Additionally, the doctor's report, which Petitioner attaches as Exhibit D to his Petition and states

5   that he suffered from lower back problems causing him to have difficulty walking, has no effect

6   upon the probable cause determination.  Whether an arrest is supported by probable cause is

7   determined by reference to the arresting officer's knowledge *at the time of the arrest*.  *Brinegar*,

8   338 U.S. at 175-76.  Evidence obtained at a later time which shows that the arrestee's acts were

9   lawful does not make the arrest illegal so long as the officer had probable cause at the time of the

10   arrest.

11        In the present case, the officers did not have access to Petitioner's medical records before

12   making the arrest.  Petitioner was free to argue at trial that the evidence did not support a

13   conviction for being under the influence or driving under the influence.  He successfully did so

14   and was not convicted of either of those charges.  That does not, however, negate the probable

15   cause to arrest him or require suppression of the evidence discovered as the result of a lawful

16   search incident to arrest.  As with his previous ineffectiveness claims, Petitioner fails to show

17   how his counsel's failure to investigate his D.M.V. and medical records would have likely

18   changed the result of his trial, as they would have had no bearing upon the probable cause

19   determination.  Petitioner is not entitled to relief on this claim.

20        In Claim IX, Petitioner alleges that his counsel was ineffective and should have filed a

21   motion to dismiss on the grounds that his arrest was illegal or that the prosecution destroyed

22   evidence.  Petitioner also claims that his counsel should have filed a peremptory challenge

23   against the trial judge.  As discussed above, Petitioner's arrest was lawful.  Any motion to

24   dismiss on that ground would have been denied.  Petitioner's second contention, relating to the

25   destruction of evidence, apparently relates to a sample of Petitioner's blood taken after he was

26   arrested that Petitioner claims was later destroyed by the police.  However, even if the alleged

11

1    blood sample was destroyed by the police, Petitioner was not convicted on the under the

2    influence charges, the only charges which the blood sample could have provided exculpatory

3    evidence.  As to Petitioner's third contention, that his counsel should have sought a peremptory

4    challenge against the trial judge, Petitioner provides no argument as to how the failure to seek the

5    peremptory challenge negatively affected the outcome of his trial, and therefore fails to show

6    how the failure to do so prejudiced his defense in any way.  For the reasons above, Petitioner

7    fails to show that he was prejudiced by any alleged failures of his trial counsel.  Petitioner is not

8    entitled to relief on Claim IX, his final ineffective assistance of trial counsel claim.

9        3.  Claim XII

10        In Claim XII, Petitioner alleges that his appellate counsel was ineffective for failing to

11   raise Claim III on direct appeal.  As discussed above, Petitioner claims that the trial court

12   impressibly allowed testimony in violation of state evidentiary law and the Confrontation Clause.

13   The *Strickland* standard for ineffective assistance of counsel, discussed above, applies equally to

14   claims of ineffective appellate counsel.  *See Smith v. Robbins*, 528 U.S. 259, 288-89 (2000).  A

15   defendant "does not have a constitutional right to compel appointed counsel to press

16   nonfrivolous points requested by the client, if counsel, as a matter of professional judgment,

17   decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

18        As discussed above, to the extent that Petitioner claims a violation of the Confrontation

19   Clause his claim is without merit as he had an opportunity to confront the officer who actually

20   searched Petitioner's car and discovered the contraband.  As to Petitioner's state law hearsay

21   claim, Petitioner fails to show how excluding the hearsay testimony would have likely changed

22   the outcome of his trial.  As discussed above in Claim III, while the court allowed the hearsay

23   statement about what Commander Callahan discovered in Petitioner's vehicle, Callahan himself

24   also testified about what he discovered.  As such, the hearsay statement was duplicative of

25   testimony that had already been introduced into evidence.  Petitioner fails to establish that he was

26   prejudiced by his appellate counsel's determination not to raise this claim on direct appeal.

1   Petitioner is not entitled to relief on this, his final, claim.

2                        IV.  REQUEST FOR AN EVIDENTIARY HEARING

3           Finally, Petitioner requests an evidentiary hearing on his Claims.  A court presented with

4   a request for an evidentiary hearing must first determine whether a factual basis exists in the

5   record to support a petitioner's claims, and if not, whether an evidentiary hearing "might be

6   appropriate."  *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999); *see also Earp v. Ornoski*,

7   431 F.3d 1158, 1166 (9th Cir. 2005).  A petitioner requesting an evidentiary hearing must also

8   demonstrate that he has presented a "colorable claim for relief."  *Earp*, 431 F.3d at 1167

9   (citations omitted).  To show that a claim is "colorable," a petitioner is "required to allege

10  specific facts which, if true, would entitle him to relief."  *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th

11  Cir. 1998) (internal quotation marks and citation omitted).  In this case, Petitioner's claims are

12  readily determined by the record.  Petitioner has not alleged any additional facts that, if true,

13  would entitle him to relief and, therefore, Petitioner fails to demonstrate that he has a colorable

14  claim for federal habeas relief.  Moreover, the Supreme Court has recently held that federal

15  habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state

16  court that adjudicated the claim on the merits" and "that evidence introduced in federal court has

17  no bearing on" such review.  *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398, 1400

18  (2011).  Thus, his request will be denied.

19                                      V.  CONCLUSION

20          Accordingly, IT IS HEREBY ORDERED that Petitioner's request for an evidentiary

21  hearing is DENIED.

22          For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for

23  writ of habeas corpus be DENIED.

24          These findings and recommendations are submitted to the United States District Judge

25  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

26  after being served with these findings and recommendations, any party may file written objections

1   with the court and serve a copy on all parties.  Such a document should be captioned "Objections

2   to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be

3   served and filed within seven days after service of the objections.  The parties are advised that

4   failure to file objections within the specified time may waive the right to appeal the District

5   Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file,

6   Petitioner may address whether a certificate of appealability should issue in the event he elects to

7   file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254

8   Cases (the district court must issue or deny a certificate of appealability when it enters a final

9   order adverse to the applicant).

10  DATED:  June 29, 2012

11

12

13  _____

14                      TIMOTHY J BOMMER
                        UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26